1  KEVIN M. LOEW, Esq., CA Bar #238080
   kloew@waterskraus.com
2  MICHAEL B. GURIEN, Esq., CA Bar #180538
   mgurien@waterskraus.com
3  NICOLE R. POURSALIMI, Esq., CA Bar #348440
   npoursalimi@waterskraus.com
4  **WATERS, KRAUS & PAUL**
   11601 Wilshire Boulevard, Suite 1900
5  Los Angeles, CA 90025
   Tel: 310-414-8146
6  Fax: 310-414-8156

7  Attorneys for Plaintiffs

8              **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

| | |
|---|---|
| JOHN M. RIST, *individually and as surviving spouse;* CEIARA RIST, *individually and as surviving child;* STORMI RIST, *individually and as surviving child;* SUMMER RIST, *individually and as surviving child; and as successors-in-interest to* Decedent JEANNIE RIST,<br><br>               Plaintiffs,<br><br>    vs.<br><br>WALMART INC.; FLORA CLASSIQUE, INC.; MEREDITH CORP.; and RAMESH FLOWERS PRIVATE LTD.,<br><br>               Defendants. | Civil Action No.: 5:23-cv-01689-JWH-KK<br><br>**VERIFIED FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs JOHN M. RIST, individually as surviving spouse and as successor-in-interest to, and Plaintiffs CEIARA RIST, STORMI RIST, and SUMMER RIST, individually and as surviving children to, Decedent JEANNIE RIST[1], hereby file this First Amended Complaint for Wrongful Death and Survival Damages against the Defendants alleging as follows:

## I.    <u>JURISDICTION AND VENUE</u>

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship.

2.    Venue is proper in this Court pursuant to (a) 28 U.S.C. § 1391(b)(1) because Defendant Flora Classique, Inc. resides in this judicial district and because all other Defendants are residents of California or are not residents of the United States, (*see* 28 U.S.C. § 1391(c)(2)), and/or (b) 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

3.    At all times pertinent to this Complaint, Defendants were and are in the business of designing, manufacturing, marketing, promoting, advertising, and selling the Better Homes and Gardens Essential Oil Infused Aromatherapy Room Spray with Gemstones ("Subject Device").

---

[1] The death certificate identifies Decedent by her given name "Jeanne."  However, Decedent referred to herself as "Jeannie," including when filling out official paperwork.  Her social security card had her name listed as "Jeannie" as do her medical records.   Accordingly, Plaintiffs identify Decedent as "Jeannie."

4.      At all times pertinent to this Complaint, Defendants acted in concert in the designing, manufacturing, marketing, promoting, advertising, and selling of aromatherapy devices, including the Subject Device. Defendants combined their property and labor in a joint undertaking for profit, with rights of mutual control over each other, rendering them jointly liable to Plaintiff.

5.      Defendants regularly transact business in California that includes marketing and selling aromatherapy devices, derive substantial revenue from their business transactions in California, and have purposely availed themselves of the privilege of doing business in California.

## II.      PARTIES

6.      Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

7.      At all relevant times, Plaintiff JOHN M. RIST was and is a resident of the State of Kansas. John Rist is the surviving husband and a successor-in-interest of JEANNIE RIST, deceased.

8.      At all relevant times, Plaintiff CEIARA RIST was and is a resident of the State of Kansas. Ceiara Rist is a surviving child of JEANNIE RIST, deceased.

9.      At all relevant times, Plaintiff STORMI RIST was and is a resident of the State of Kansas. Stormi Rist is a surviving child of JEANNIE RIST, deceased.

//

10.     At all relevant times, Plaintiff SUMMER RIST was and is a resident of the State of Kansas. Summer Rist is a surviving child of JEANNIE RIST, deceased.

11.     Plaintiff JOHN M. RIST brings this action as successor-in-interest to the claims for damages resulting from the personal injuries suffered by JEANNIE RIST, deceased, as a survival action, pursuant to California Code of Civil Procedure sections 377.30 *et seq*. In addition, because of their relationship to JEANNIE RIST, deceased, Plaintiffs JOHN M. RIST, CEIARA RIST, STORMI RIST, and SUMMER RIST join in this action their wrongful death claims and action, pursuant to California Code of Civil Procedure sections 377.60, *et seq*.

12.     The Declaration of Successor-in-Interest is attached as Exhibit A.

13.     At all relevant times, Defendant WALMART INC. ("Walmart") was and is a corporation organized and existing under the laws of the State of Delaware, with its principal office in the State of Arkansas. Defendant Walmart is registered to do business in the State of California. Walmart has been served with process via its agent for service of process, C T Corporation System, 330 North Brand Blvd, Suite 700, Glendale, California 91203.

14.     At all relevant times, Defendant FLORA CLASSIQUE, INC. ("Flora") was and is a corporation organized and existing under the laws of the State of California and doing business as a manufacturer, importer, and distributor of home fragrances. Flora has been served with process via its agent for service of process, Marla Merhab Robinson, 1551

N Tustin Ave, Suite 1020, Santa Ana, CA 92705.

15.    At all relevant times, Defendant MEREDITH CORPORATION was a corporation organized and existing under the laws of the State of Iowa, with its principal office in the State of Iowa and doing business as a manufacturer, retailer, seller, and distributor of home fragrances in the State of California. MEREDITH CORPORATION was registered to do business in the State of California and filed a certificate of surrender on November 14, 2022. MEREDITH CORPORATION has been served with process through the California Secretary of State at 1500 11th Street, 3rd Floor, Room 390, Sacramento, CA 95814.

16.    At all relevant times, Defendant RAMESH FLOWERS PRIVATE LIMITED ("Ramesh Flowers") was an Indian manufacturing company and supplier of product for Walmart. Ramesh Flowers is the parent company of Defendant Flora Classique, the California-based corporation that participated in the design, manufacture, and importation of the Subject Device. Ramesh Flowers' business address is A-62, Sipcot Industrial Complex, Tuticorin - 628002, Tamil Nadu, India. Ramesh Flowers has its principal place of business in India. Ramesh Flowers has been served with process through its general manager in the State of California, Flora Classique, Inc., via Flora Classique's agent for service of process, Marla Merhab Robinson, 1551 N Tustin Ave, Suite 1020, Santa Ana, CA 92705.

//

17.   Plaintiffs are informed and believe and based thereon allege that at all relevant times Defendants and each of them were the agents, servants, employees, representatives and/or joint venturers of their co-Defendants and were, as such acting within the course, scope, and authority of said agency, services, employment, representation, and/or joint venture in that each and every Defendant, as aforesaid when acting as principal, was negligent in the selection and hiring of each and every other Defendant as an agent, servant, employee, representative, and/or joint venturer.

18.   Plaintiffs are informed and believe, and based thereon allege that at all times mentioned herein each of Defendants, inclusive, and each of them were the agents, servants, employees, and representatives of each of the remaining Defendants and were at all times material hereto acting within the authorized course and scope of said agency, service, employment and/or representation, and/or that all of said acts, conduct, and omissions were subsequently ratified by their respective principals and the benefits thereof accepted by such principals.

### III.   **FACTUAL ALLEGATIONS**

19.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

### *Burkholderia pseudomallei and Melioidosis*

20.   *Burkholderia pseudomallei* is a deadly bacterium found predominately in Southeast Asia. The bacterium is extremely rare in North America. In the United States,

*Burkholderia pseudomallei* only occurs naturally in Puerto Rico and the U.S. Virgin Islands.

21.     *Burkholderia pseudomallei* is considered a tier 1 select agent according to the United States Centers for Disease Control and Prevention ("CDC") and the United States Department of Agriculture Animal and Plant Health Inspection Service.

22.     Infection with *Burkholderia pseudomallei* is a serious health risk for death. Eradication of the organism following infection is difficult. The organism is intrinsically resistant to many antibiotics. The mortality rate for individuals infected with *Burkholderia pseudomallei* has been reported to be as high as 50 percent and 95 percent for patients with the septic form of the infection. Infection with *Burkholderia pseudomallei* is the causative agent of melioidosis.

23.     Melioidosis is found only in individuals who have been exposed to environments containing *Burkholderia pseudomallei*. The infection is acquired through cutaneous inoculation, inhalation, and aspiration. It is very rare for people to contract the infection from another person. Only approximately a dozen cases of melioidosis are identified each year in the United States and have primarily occurred among travelers and immigrants coming from places where the infection is widespread, such as Southeast Asia.

24.     Melioidosis can present with an array of clinical signs and symptoms, including, but not limited to, localized pain or swelling; high fever; ulceration; cough; chest pain; headache; respiratory distress; abdominal discomfort; joint pain; disorientation;

weight loss; central nervous system/brain infection; seizures, and death. Due to its nonspecific symptoms, melioidosis can initially be mistaken for other infections or diseases, which can delay proper treatment.

### *The Better Homes and Gardens Aromatherapy Spray*

25.    Aromatherapy sprays are marketed to the public as to be effective in relieving stress, promoting restful sleep, and promoting overall health and well-being. The Subject Device was this type of aromatherapy device, and it was meant to impart a pleasant smell to the consumer and to be inhaled or otherwise absorbed by the human body.

26.    Better Homes and Gardens Essential Oil Infused Aromatherapy Room Spray with Gemstones, including the Subject Device, were manufactured in India.

27.    In March 2021, an adult in Kansas (JEANNIE RIST) was identified as infected with *Burkholderia pseudomallei*, a deadly bacterium rarely found in North America, resulting in her hospitalization and death. In May 2021, two other cases of non-travel-related *Burkholderia pseudomallei* infection were identified: an adult in Minnesota and a four-year-old in Texas. Both of those cases involved extended hospitalizations but were ultimately not fatal. A fourth case of the infection was identified in Georgia in late July 2021, following the individual's death in the hospital.

28.    In or about June 2021, the CDC began working with the Kansas Department of Health and Environment, the Minnesota Department of Health, and the Texas Department of State Health Services to investigate the three cases of *Burkholderia*

8
FIRST AMENDED COMPLAINT

*pseudomallei* infection in Kansas, Minnesota, and Texas. The investigation was later expanded to include the Georgia Department of Public Health based on the identification of the fourth case of the infection in Georgia in July 2021.

29.     Based on this investigation, the CDC reported in August 2021 that the four cases of *Burkholderia pseudomallei* infection closely matched each other, indicating that they likely shared a common source or cause, which remained unknown.

30.     Based on further investigation over the next few months, the CDC reported on October 22, 2021, that the source or cause of the infections in the four cases had been identified as contaminated Better Homes and Garden Essential Oil Infused Aromatherapy Room Spray with Gemstones that was manufactured in India and sold at Walmart stores between February and October 21, 2021.

31.     On October 21, 2021, recalls of Better Homes and Gardens Essential Oil Infused Aromatherapy Room Spray with Gemstones in six scents were initiated: Lavender & Chamomile (84140411420); Lemon & Mandarin (84140411421); Lavender (84140411422); Peppermint (84140411423); Lime & Eucalyptus (84140411424); and Sandalwood & Vanilla (84140411425). These sprays were sold at Walmart stores in Georgia, Alabama, Colorado, Florida, Iowa, Illinois, Indiana, Kansas, Minnesota, Missouri, New Mexico, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Utah, and Wisconsin.

//

***Jeannie Rist's Exposure and Death***

32.    In early 2021, JEANNIE RIST purchased the Subject Device from a Walmart located near Wichita, Kansas. On March 13, 2021, after being exposed to the Subject Device, JEANNIE RIST presented to the Emergency Department of Wesley Woodlawn Hospital located at 2610 N. Woodlawn Boulevard, Wichita, Kansas 67220, complaining of shortness of breath and a cough. There, a chest CT scan was performed, which demonstrated a subsegmental pulmonary emboli. In the following days, JEANNIE RIST developed worsening encephalopathy, hypotension, and a fever. Blood cultures were obtained, and she was transferred to the intensive care unit ("ICU") of the hospital for closer monitoring. In the ICU, JEANNIE RIST developed amenia and required a blood transfusion. Her condition continued to deteriorate rapidly. After her blood cultures were found positive for *Burkholderia pseudomallei*, JEANNIE RIST was evaluated by an infectious disease physician. JEANNIE RIST developed septic shock that required intubation, mechanical ventilation, and additional units of blood via transfusion. JEANNIE RIST died of melioidosis on or about March 22, 2021.

***Plaintiffs' Discovery of the Causes of Action***

33.    JEANNIE RIST's sudden illness and death were shocking and bewildering to Plaintiffs.

34.    At no time prior to her death, or at any time prior to late October or early November 2021, were JEANNIE RIST or Plaintiffs ever informed or made aware of the

10
FIRST AMENDED COMPLAINT

cause or source of her fatal *Burkholderia pseudomallei* infection, or that the infection was or might have been caused by, or related to, her use of, or exposure to, an aromatherapy spray. Nor were JEANNIE RIST or Plaintiffs ever informed or made aware, at any time prior to late October or early November 2021, of any facts or information suggesting, or that caused them to suspect, that the fatal infection was the result of wrongdoing or that gave them reason to suspect or investigate whether the infection had been wrongfully caused.

35.    None of the health care providers involved in the diagnosis, care, and treatment of JEANNIE RIST's illness ever informed her or Plaintiffs of the cause or potential cause of her fatal *Burkholderia pseudomallei* infection. Nor did any of her health care providers ever advise, suggest, or inform JEANNIE RIST or Plaintiffs that the infection was or might have been caused by, or related to, her use of, or exposure to, an aromatherapy spray, or that it was or might have been wrongfully caused.

36.    As alleged above, in or about June 2021, the CDC, along with the Kansas Department of Health and Environment, the Minnesota Department of Health, and the Texas Department of State Health Services, initiated an investigation into the source or cause JEANNIE RIST's *Burkholderia pseudomallei* infection and the two other cases of the infection identified in Minnesota and Texas in May 2021. The investigation was later expanded to include the Georgia Department of Public Health based on the identification of a fourth case of the infection in Georgia in late July 2021. The investigation continued

FIRST AMENDED COMPLAINT

into October 2021, when, on October 22, 2021, the CDC reported that the source or cause of the infections had been identified as contaminated Better Homes and Garden Essential Oil Infused Aromatherapy Room Spray with Gemstones that was manufactured in India and sold at Walmart stores between February and October 21, 2021.

37.     In late October or early November 2021, Plaintiffs were informed by the Kansas Department of Health and Environment that the source or cause of JEANNIE RIST's *Burkholderia pseudomallei* infection was contaminated Better Homes and Garden Essential Oil Infused Aromatherapy Room Spray with Gemstones. This was the first time that Plaintiffs knew or suspected, or had reason to know or suspect, that JEANNIE RIST's fatal infection had been caused by wrongdoing. At no time prior to receiving this information from the Kansas Department of Health and Environment did Plaintiffs know or suspect, have reason to know or suspect, or have reason to investigate whether JEANNIE RIST's infection was or might have been wrongfully caused.

38.     Accordingly, because Plaintiffs did not know or suspect, or have reason to know or suspect, until late October or early November 2021, that JEANNIE RIST's illness and death were the result of wrongdoing, Plaintiffs did not discover, or have reason to discover, the causes of action alleged herein until that time, at the earliest.

### Flora Classique's Role

39.     Flora Classique services large retailers, such as Walmart, Ross, Hobby Lobby, Burlington, Bed Bath & Beyond, and Michaels.

40.     Flora Classique manufactured the Subject Device.

41.     Flora Classique imported the Subject Device into the United States.

42.     Flora Classique participated in the distribution of the Subject Device.

43.     Flora Classique participated in marketing the Subject Device to distributors and retailers in the United States.

44.     As the product's manufacturer, Flora Classique participated in, and was responsible for, the design of the Subject Device.

45.     As the product's manufacturer, Flora Classique participated in, and was responsible for, the manufacturing process of the Subject Device.

46.     As the product's manufacturer, Flora Classique participated in, and was responsible for, the assembly of the Subject Device.

47.     Flora Classique participated in, and was responsible for, inspection, testing, and quality control in the design, manufacturing, importation, and distribution of the Subject Device in the United States.

48.     As a designer, manufacturer, marketer, importer, and distributor of the Subject Device, Flora Classique was required to develop proper design, manufacturing, inspection, testing, quality control, and distribution practices that would prevent contamination of the Subject Device with bacteria, including *Burkholderia pseudomallei*.

49.     The design, manufacturing, inspection, testing, quality control, and distribution practices conducted by Flora Classique were done without proper

consideration for the presence of bacteria.

50.     Flora Classique was required to develop and follow proper industrial hygiene practices with respect to the manufacture and distribution of the Subject Device.

51.     Flora Classique failed to develop and follow proper industrial hygiene practices with respect to the manufacture, inspection, and distribution of the Subject Device.

52.     At the time the Subject Device left Flora Classique's possession, the Subject Device was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product.

53.     Flora Classique knew the Subject Device would be used as a household product, as it was by Plaintiffs, and that consumers, such as Plaintiffs, would likely be exposed to the products.

54.     Flora Classique designed the Subject Device in a manner that allowed it to transmit bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use through aerosolization, fluid leakage, and other means.

55.     As the manufacturer of the product, Flora Classique was required to eliminate or minimize the potential for contamination, mix-ups, or errors in the manufacture of the Subject Device.

56.     These manufacturing requirements include keeping the manufacturing process clean and sanitary and without contaminates, ensuring manufacturing personnel

are qualified and trained on good manufacturing practices, equipment usage that ensures the product is contaminate-free, equipment verification, process validation, and complaint handling.

57.    These manufacturing requirements protect consumers from purchasing or using a product dangerous to human health. Flora Classique failed to implement and comply with these manufacturing requirements, including keeping the manufacturing process clean and sanitary and without contaminates, ensuring manufacturing personnel are qualified and trained on good manufacturing practices, equipment usage that ensures the product is contaminant-free, equipment verification, process validation, and complaint handling.

### *Ramesh Flowers's Role*

58.    Ramesh Flowers is a manufacturer, importer, and distributor of home fragrances, candles, essential oils, and incense in the United States, including in the State of California. Ramesh Flowers is a member of Gala Group, one of the largest manufacturers of candles and scents in the world.

59.    Ramesh Flowers actively markets and distributes products such as aromatherapy room sprays, scented candles, diffusers, and potpourri in the State of California and has done so for over a decade. Ramesh Flowers actively marketed its products, including the Subject Device, in the State of California through its California-based location, Flora Classique.

60.     Ramesh Flowers transacts business in the State of California, either on its own and/or by and through its subsidiaries and derives substantial revenue from business in the State of California. Ramesh Flowers derives substantial revenue from goods sold and used in the State of California, and regularly does or solicits business in California. It also maintains a facility in Riverside County, California, through which it derives substantial revenue from goods sold and used by consumers throughout the State of California. Under California's long-arm statute (Cal. C.C.P. § 410.10), this Court has personal jurisdiction over Ramesh Flowers. Defendant Ramesh Flowers derives revenue from sales of its products, including Better Homes and Gardens aromatherapy products, within the State of California and has purposely availed itself of the privilege of doing business in California. Ramesh Flowers entered into agreements to participate in the design, manufacture, supply, and importation of the Subject Device with its California subsidiary, Defendant Flora Classique. Ramesh Flowers designed, manufactured, supplied, and exported the Subject Device from India in the purposeful direction of the State of California. For the purpose of its business in the United States, Ramesh Flowers' principal place of business is through its subsidiary and only United States based importer of record, Flora Classique in Wildomar, California.

61.     Ramesh Flowers actively participated in the design, manufacture, and supply of the Subject Device in conjunction with its California-based location, Flora Classique, and the direction of Walmart. Under its contractual relationship with Defendant Walmart,

Ramesh Flowers produced and supplied the Subject Device according to Walmart's specifications and exported it to the United States for use by Walmart's consumers.

62.    Ramesh Flowers is the parent company of Flora Classique. Ramesh Flowers maintains and controls Flora Classique as its only United States based subsidiary and uses it as its importer of record for products, including the Subject Device. Flora Classique and Ramesh Flowers share executives and employees; Pattamadai Sundararaman Suresh is Gala Group GmbH's managing director for India, Ramesh Flowers' CEO, and Flora Classique's CEO, CFO, and President, as well as a director for Flora Classique.

63.    Gala Group describes Ramesh Flowers' relationship with California-based Flora Classique as follows: "Flora Classique Inc., has been a subsidiary of Ramesh Flowers in California for over a decade, which extends its support in activities like marketing, distribution and strategic development in the American sub-continent." Ramesh Flowers has the same description on its own website. On that same website, Ramesh Flowers also identifies its "international sales office USA" as Flora Classique's office in Wildomar, California.

64.    On its website, Ramesh Flowers makes the following claims:

- That it follows "an integrated management system approach to all implementations in the company";[2]

- "Successful implementation of all QHSE (Quality, Health, Safety &

---

[2] *See Compliance*, RAMESH FLOWERS, https://www.rameshflowers.com/compliance-1-1 (last accessed July 11, 2023).

Environment) standards, certified with RVA accreditation [sic] for all three standards";[3]

- "A well trained team of internal auditors conduct audits to ensure all systems are in place";[4]

- "A full fledged training team is now in place to give continuous training to all employees especially with respect to environment and health & safety."[5]

- "Compliant to Stringent 'International Laws & Standards' and ratified by independent audit agencies";[6] and,

- Accreditation with QMS ISO 9001:2015, EMS ISO 9001:2015, and OHSAS ISO 45001:2018;[7]

65.   Ramesh Flowers engages in marketing, distribution, and strategic development for its products in the United States, including in the State of California.

66.   Ramesh Flowers has a location in the United States, and more specifically in the State of California.

//

//

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *See Manufacturing + Sales*, RAMESH FLOWERS, https://www.rameshflowers.com/manufacturing-sales (last accessed July 11, 2023).
[7] *See An Overview | As on March 2020*, RAMESH FLOWERS, https://www.rameshflowers.com/an-overview (last accessed July 11, 2023).

FIRST AMENDED COMPLAINT

67.    Ramesh Flowers designed the Subject Device in conjunction with Defendants Walmart and Flora Classique.

68.    Upon information and belief, the Subject Device was supplied by Ramesh Flowers and produced at its India-based diffuser production factory. Ramesh Flowers exported the Subject Device that ultimately injured JEANNIE RIST, deceased, to its only United States based importer of record, Defendant Flora Classique. In conjunction with Flora Classique, Ramesh Flowers exported the Subject Device to the United States, and specifically into the State of California via its importer of record, Flora Classique.

69.    Ramesh Flowers manufactured and supplied the Subject Device in conjunction with Defendants Walmart and Flora Classique.

70.    Ramesh Flowers participated in marketing the Subject Device to distributors and retailers in the United States. As the product's manufacturer, Ramesh Flowers participated in, and was responsible for, the design of the Subject Device.

71.    As the product's manufacturer, Ramesh Flowers participated in, and was responsible for, the manufacturing process of the Subject Device.

72.    As the product's manufacturer, Ramesh Flowers participated in, and was responsible for, the assembly of the Subject Device.

73.    Ramesh Flowers participated in, and was responsible for, inspection, testing, and quality control in the design, manufacturing, importation, and distribution of the Subject Device in the United States.

74.     As a designer, manufacturer, marketer, importer, and distributor of the Subject Device, Ramesh Flowers was required to develop proper design, manufacturing, inspection, testing, quality control, and distribution practices that would prevent contamination of the Subject Device with bacteria, including *Burkholderia pseudomallei*.

75.     The design, manufacturing, inspection, testing, quality control, and distribution practices conducted by Ramesh Flowers were done without proper consideration for the presence of bacteria.

76.     Ramesh Flowers was required to develop and follow proper industrial hygiene practices with respect to the manufacture and distribution of the Subject Device.

77.     Ramesh Flowers failed to develop and follow proper industrial hygiene practices with respect to the manufacture, inspection, and distribution of the Subject Device.

78.     At the time the Subject Device left in Ramesh Flowers's possession, the Subject Device was defective that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product.

79.     Ramesh Flowers knew the Subject Device would be used as a household product, as it was by Plaintiffs, and that consumers, such as Plaintiffs, would likely be exposed to the products.

80.     Ramesh Flowers designed the Subject Device in a manner that allowed it to transmit bacteria, including *Burkholderia pseudomallei*, directly to consumers during

routine household use through aerosolization, fluid leakage, and other means.

81.   As the manufacturer of the product, Ramesh Flowers was required to eliminate or minimize the potential for contamination, mix-ups, or errors in the manufacture of the Subject Device.

82.   These manufacturing requirements include keeping the manufacturing process clean and sanitary and without contaminates, ensuring manufacturing personnel are qualified and trained on good manufacturing practices, equipment usage that ensures the product is contaminate-free, equipment verification, process validation, and complaint handling.

83.   These manufacturing requirements protect consumers from purchasing or using a product dangerous to human health.

84.   Ramesh Flowers failed to implement and comply with these manufacturing requirements, including keeping the manufacturing process clean and sanitary and without contaminates, ensuring manufacturing personnel are qualified and trained on good manufacturing practices, equipment usage that ensures the product is contaminant-free, equipment verification, process validation, and complaint handling.

***Walmart's and Meredith Corporation's Roles***

85.   Walmart and Meredith Corporation were engaged in the business of distributing goods, including the Subject Device, to the public.

//

21
FIRST AMENDED COMPLAINT

86.     Walmart and Meredith Corporation were responsible for the branding, marketing, and retailing of the Subject Device.

87.     Walmart and Meredith Corporation distributed the Subject Device.

88.     Walmart and Meredith Corporation sold the Subject Device to United States consumers, including Plaintiffs.

89.     Walmart and Meredith Corporation had an exclusive deal to market and sell the Subject Device to United States consumers.

90.     Walmart sold the Subject Device directly to Plaintiffs in a "brick and mortar" Walmart store.

91.     Walmart was responsible for selecting and supervising the importer/supplier (Flora Classique) of the Subject Device.

92.     Walmart knew it was placing the Subject Device on the market without inspection for defects that could harm United States consumers.

93.     Meredith Corporation participated in the distribution and sale of the Subject Device.

94.     Walmart and Meredith Corporation played a substantial role in ensuring that the Subject Device was safe for United States consumers, including Plaintiffs.

95.     Walmart and Meredith Corporation were in a position to exert pressure on the manufacturers, importers, and distributors of the Subject Device.

96.     Product to ensure the Subject Device was safe United States consumers, including Plaintiffs.

97.     Due to the relationship between Walmart, Meredith Corporation, and Flora, Walmart and Meredith Corporation had a direct link in the chain of distribution of the Subject Device, acting as powerful intermediaries between Flora Classique and consumers.

98.     Walmart and Meredith Corporation received a financial benefit from selling Subject Device to United States consumers, including Plaintiffs.

99.     Meredith Corporation knew it was placing the Subject Device on the market without inspection for defects that could harm United States consumers. Meredith Corporation was responsible for selecting and supervising the importer/supplier (Flora) of the Subject Device.

100.    Walmart substantially controls the chain of distribution of the Subject Device due to its bargaining power as the largest retailer in the world.

101.    Meredith Corporation substantially controls the chain of distribution of the Subject Device due to its bargaining power.

102.    As part of Walmart's control over the chain of distribution of the product, Walmart requires its suppliers to purchase and maintain Commercial General Liability insurance, Products Liability insurance, and Umbrella/Excess Walmart sets certain quality standards for its product suppliers.

//

103.   Walmart advertises that it "hold[s] [its] suppliers to the same high These standards apply to suppliers of Walmart, "including goods for Walmart requires its suppliers to execute a signed supplier agreement.

104.   Walmart has a supplier compliance portal for its suppliers so that suppliers can review requirements and resources related to supply to Walmart. Walmart has the right to audit or inspect suppliers at any time to determine whether the suppliers are complying with the supplier standards.

105.   Walmart requires its suppliers to be current on laws, regulations, standards, industry best practices, conditions of sale, and scientific knowledge.

106.   Walmart required certain suppliers to "disclose to Walmart how and where those products are made and who is making them."

107.   Walmart requires its suppliers to implement procedures to monitor compliance with laws, policies, and Walmart's own supplier standards.

108.   Walmart's supplier standards were insufficient to ensure that the Subject Device was safe for consumers.

109.   Walmart failed to enforce its own supplier standards with respect to the Subject Device, thereby causing a defective and dangerous product to be sold to United States consumers, including Plaintiffs.

110.   Walmart and Meredith Corporation failed to ensure that the Subject Device was designed, manufactured, imported, assembled, and tested in a manner that would

1  ensure the product was safe for human use and exposure.

2        111.   Walmart and Meredith Corporation failed to properly monitor product safety

3  issues with respect to the Subject Device. Walmart and Meredith Corporation failed to

4  properly monitor the Subject Device to ensure the product and its manufacturing process

5  met recognized safety standards.

6        112.   Walmart and Meredith Corporation failed to properly monitor the Subject

7  Device for product specification deviations, contaminates, or microbiological hazards that

8  made the subject product unsafe for consumers.

9                      **IV.   CAUSES OF ACTION**

10 **A.   Count One: Strict Product Liability—Flora Classique and Ramesh Flowers—**

11      **Design Defect**

12        113.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of

13 the Complaint as if fully stated herein.

14        114.   At all times relevant, Flora Classique and Ramesh Flowers were engaged in

15 the design, development, testing, manufacture, assembly, promotion, marketing,

16 distribution, and/or sale of the Subject Device.

17        115.   The Subject Device was defective at the time it was designed, developed,

18 tested, manufactured, assembled, promoted, marketed, distributed, and sold. The Subject

19 Device was defective in that its design allowed it to become contaminated with the rare

20 and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is

1   difficult to diagnose and can be fatal.

2       116.   The Subject Device purchased and used by Plaintiffs was expected to reach,

3   and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without

4   substantial change to the condition in which it was distributed and sold by Flora Classique

5   and Ramesh Flowers.

6       117.   At the time the Subject Device left Flora Classique and Ramesh Flowers'

7   possession, the Subject Device was defective, and its condition made it unreasonably

8   dangerous to Plaintiffs, including JEANNIE RIST, deceased. The Subject Device was

9   defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to

10  collect and multiply in the product. Said bacteria could subsequently, and did, come into

11  contact with consumers like JEANNIE RIST, deceased, through aerosolization, fluid

12  leakage, and other means.

13      118.   Flora Classique and Ramesh Flowers intended for the Subject Device to be

14  used as a household product, as it was by Plaintiffs.

15      119.   Flora Classique and Ramesh Flowers knew or should have known that the

16  Subject Device would be used as a household product, as it was by Plaintiffs.

17      120.   The Subject Device was used by Plaintiffs in the manner in which it was

18  intended to be used, and thus, it was reasonably foreseeable that the Subject Device would

19  be used as a household product.

20  //

121.   At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the design defects associated with the Subject Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

122.   The Subject Device, as designed by Flora Classique and Ramesh Flowers, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

123.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject Device. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Device that is not defective.

124.   The foreseeable risks of harm posed by the Subject Device could have been reduced or avoided by the adoption of a reasonable alternative design by Flora Classique and Ramesh Flowers, and the omission of an alternative design renders the Subject Device not reasonably safe for its intended use.

125.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that the Subject Device would not be unreasonably dangerous and defective, and that the product would not cause JEANNIE RIST, deceased, to develop a deadly infection.

1   126.   The Subject Device used by Plaintiffs as a household product did not perform

2   as safely as an ordinary consumer would have expected it to perform when used in an

3   intended or reasonably foreseeable way.

4   127.   The use of the Subject Device as a household product was a substantial factor

5   and the cause in fact of JEANNIE RIST's injuries, specifically, her contraction of an

6   infection, her development of melioidosis, her subsequent pain and suffering, and eventual

7   death.

8   128.   As a direct and proximate result of the use of the Subject Device as a

9   household product and its defective design, JEANNIE RIST, deceased, suffered

10   catastrophic injury, pain and suffering, disability, and death.

11   129.   Flora Classique and Ramesh Flowers' conduct was a substantial factor and

12   proximate cause of the serious personal injuries and death sustained by Plaintiffs' decedent,

13   JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an

14   appreciable period of time. Plaintiffs have suffered damage as a direct and proximate result

15   of Defendants' conduct described herein.

16   **B.   Count Two: Strict Liability—Flora Classique and Ramesh Flowers—**

17   **Manufacturing Defect**

18   130.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of

19   the Complaint as if fully stated herein.

20   //

131.   At all times relevant, Flora Classique and Ramesh Flowers were engaged in the manufacture and assembly of the Subject Device.

132.   The Subject Device was defective in its manufacture in that the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or shipped.

133.   Flora Classique and Ramesh Flowers did not intend for the Subject Device to be contaminated with deadly bacteria at the time of manufacture and/or assembly.

134.   The Subject Device was defective in manufacture in that it differed from Flora Classique and Ramesh Flowers' intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacterium not intended or found in other units of the same product.

135.   The Subject Device purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Flora Classique and Ramesh Flowers.

136.   At the time the Subject Device left Flora Classique and Ramesh Flowers' possession, the Subject Device was defective, and its condition made it unreasonably dangerous for Plaintiffs, including JEANNIE RIST, deceased.

137.   The Subject Device was defective in that its manufacture and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the

29
FIRST AMENDED COMPLAINT

device. Said bacteria could subsequently, and did, come into contact with consumers, like JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

138.   Flora Classique and Ramesh Flowers intended for the Subject Device to be used as a household product, as it was by Plaintiffs.

139.   Flora Classique and Ramesh Flowers knew or should have known that the Subject Device would be used as a household product, as it was by Plaintiffs.

140.   The Subject Device was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject Device would be used as a household product.

141.   At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the manufacturing and assembling defects associated with the Subject Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

142.   The Subject Device, as manufactured and assembled by Flora Classique and Ramesh Flowers, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

143.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject

Device. The foreseeable risks also far outweigh any cost of manufacturing and assembling an alternative design of the Subject Device that is not defective.

144.   Flora Classique and Ramesh Flowers manufactured and assembled the Subject Device with bacteria, including *Burkholderia pseudomallei*, present in and/or on the product. The contamination occurred on the production line, during manufacture, or elsewhere while in Flora Classique and Ramesh Flowers's possession or control.

145.   Flora Classique and Ramesh Flowers' failure to ensure proper sanitation, failure to ensure proper workmanship, failure to ensure adequate testing, and/or failure to ensure adequate labeling for the Subject Device caused the product to be manufactured and assembled in a manner that made the product defective and unreasonably dangerous.

146.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that the Subject Device would not be unreasonably dangerous and defective, and that the product would not cause JEANNIE RIST, deceased, to develop a deadly bacterial infection.

147.   The use of the Subject Device as a household product was a substantial factor and the cause in fact of JEANNIE RIST's injuries, specifically, her contraction of an infection, her development of melioidosis, her subsequent pain and suffering, and eventual death.

148.   As a direct and proximate result of the use of the Subject Device as a household product and its defective design and manufacture, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

149.   Flora Classique and Ramesh Flowers' conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**C.   Count Three: Strict Products Liability—Flora Classique and Ramesh Flowers—Failure to Warn**

150.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

151.   At all times relevant, Flora Classique and Ramesh Flowers were engaged in the design, development, testing, manufacture, assembly, promotion, marketing, distribution, and/or sale of the Subject Device.

152.   The Subject Device was defective at the time it was designed, manufactured, assembled, distributed, and sold.

153.   The Subject Device was defective in that its design and manufacture allowed it to become contaminated with deadly bacteria.

154.   The Subject Device was defective and unreasonably dangerous in that the warnings, instructions, labels, and materials failed to adequately warn distributors, retailers, and consumers about the product's serious risk of causing infection from aerosolization, fluid leakage, and other means via the product.

155.   Flora Classique and Ramesh Flowers failed to timely and adequately warn distributors, retailers, and consumers of the Subject Device's serious risks, including: (i) that the Subject Device was contaminated with bacteria, specifically *Burkholderia pseudomallei*, at the time the product was manufactured, assembled, or imported; (ii) that the Subject Device could harbor and grow bacteria, including *Burkholderia pseudomallei*; and (iii) that bacteria, including *Burkholderia pseudomallei*, can reach the consumer from aerosolization, fluid leakage, and other means.

156.   The Subject Device purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Flora Classique.

157.   At the time the Subject Device left Flora Classique and Ramesh Flowers' possession, the Subject Device was defective, and its condition made it unreasonably dangerous for Plaintiffs, including JEANNIE RIST, deceased.

158.   The Subject Device was defective in that its design and manufacture allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

159.   Flora Classique and Ramesh Flowers intended for the Subject Device to be used as a household product, as it was by Plaintiffs.

//

160.   Flora Classique and Ramesh Flowers knew or should have known that the Subject Device would be used as a household product, as it was by Plaintiffs.

161.   The Subject Device was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject Device would be used as a household product.

162.   At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the design defects associated with the Subject Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

163.   The Subject Device, as designed by Defendants, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

164.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject Device. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Device that is not defective.

165.   The foreseeable risks of harm posed by the Subject Device could have been reduced or avoided by the adoption of a reasonable alternative design by Flora Classique

and Ramesh Flowers, and the omission of an alternative design renders the Subject Device not reasonably safe for its intended use.

166.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that the Subject Device would not be unreasonably dangerous and defective, that Flora Classique and Ramesh Flowers provided all proper warnings, instructions, and labels regarding the product, and that the product would not cause JEANNIE RIST, deceased, to contract a bacterial infection.

167.   If Plaintiffs and/or JEANNIE RIST, deceased, had been made aware of the significant risks of *Burkholderia pseudomallei* infection associated with the use of the Subject Device, Plaintiffs would not have purchased and used the product in their household.

168.   As a direct and proximate result of the use of the Subject Device as a household product and its defective design, manufacture, and Flora Classique and Ramesh Flowers' failure to warn, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

169.   Flora Classique and Ramesh Flowers' conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**D.**   **Count Four: Negligence—Flora Classique and Ramesh Flowers**

170.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

171.   Flora Classique and Ramesh Flowers owed a duty of reasonable care to Plaintiffs, JEANNIE RIST, deceased, and all reasonably foreseeable users of the Subject Device, when they designed, imported, tested, assembled, manufactured, and distributed the Subject Device.

172.   This duty of reasonable care required Flora Classique and Ramesh Flowers to ensure that the product was in full compliance with industry regulations and standards and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

173.   Flora Classique and Ramesh Flowers breached this duty of care by designing, testing, assembling, manufacturing, importing, and distributing the Subject Device in a manner that made the product defective and unreasonably dangerous for its intended and foreseeable use. This defect stems from the Subject Device's propensity to permit the colonization and growth of bacteria and the ability of said bacteria to reach the ordinary consumer through aerosolization, fluid leakage, and other means.

174.   Flora Classique and Ramesh Flowers further breached their duty of care by allowing the Subject Device, including the product used by Plaintiffs, to become contaminated with *Burkholderia pseudomallei* while still in Flora Classique and Ramesh

Flowers' possession, and then sold to the end-user without being properly disinfected.

175.   Flora Classique and Ramesh Flowers knew or reasonably should have known that the Subject Device was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

176.   Flora Classique and Ramesh Flowers knew or reasonably should have known that consumers of the Subject Device would not realize the danger of potential transmission of deadly bacteria.

177.   Flora Classique and Ramesh Flowers failed to adequately warn of the danger of potential deadly bacterial transmission and failed to adequately instruct on the safe use of the Subject Device.

178.   A reasonable designer, manufacturer, and distributor under the same or similar circumstances would have warned of the danger and instructed retailers and consumers on the safe use of the Subject Device.

179.   Flora Classique and Ramesh Flowers owed Plaintiffs and JEANNIE RIST, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn retailers and consumers, including Plaintiffs and JEANNIE RIST, deceased, about these defects.

180.   Flora Classique and Ramesh Flowers owed a duty to Plaintiffs and JEANNIE RIST, deceased, and all foreseeable users to issue a timely recall of all Better Homes and Gardens aromatherapy products in use throughout the United States when Flora Classique

became aware that the Subject Device had become contaminated.

181.   Flora Classique and Ramesh Flowers breached its duty by failing to timely recall all Better Homes and Gardens aromatherapy products units, despite its knowledge that the units had been exposed to deadly bacteria and were possibly contaminated.

182.   A reasonable designer, manufacturer, importer, and distributor under the same or similar circumstances would have recalled the Subject Device, given the potential life-threatening risks to consumers.

183.   Flora Classique and Ramesh Flowers owed Plaintiffs and JEANNIE RIST, deceased, a duty of reasonable care to follow good manufacturing, assembling, and distributing processes to prevent the Subject Device from becoming contaminated with deadly bacteria.

184.   Flora Classique and Ramesh Flowers breached its duty by failing to follow good manufacturing, assembling, and distributing processes to prevent its products from becoming contaminated with deadly bacteria.

185.   Flora Classique and Ramesh Flowers had a duty to act as a prudent supplier of a consumer product meant for human exposure, including to properly test the Subject Device to ensure harmful bacteria was not present.

186.   Flora Classique and Ramesh Flowers had a duty to understand the product specifications and designs of the Subject Device.

//

187.   Flora Classique and Ramesh Flowers had a duty to exercise reasonable care in selecting a foreign manufacturer of the Subject Device, even in the event Flora Classique chose itself to be the manufacturer.

188.   Flora Classique and Ramesh Flowers had a duty to inspect and test the foreign manufacturing facilities manufacturing the Subject Device to ensure that the product was safe for United States consumers.

189.   Flora Classique and Ramesh Flowers had a duty to identify quality control mechanisms in the manufacturing process of the Subject Device to ensure that the product was safe for United States consumers.

190.   Flora Classique and Ramesh Flowers had a duty to establish contracts governing the design and production, testing, inspection, and quality control of the Subject Device to ensure that the product would be safe for United States consumers.

191.   Flora Classique and Ramesh Flowers had a duty to inspect the Subject Device to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

192.   Flora Classique and Ramesh Flowers failed to properly and timely warn importers, distributors, retailers and Plaintiffs and JEANNIE RIST, deceased, about these defects, thereby breaching its duty of care.

193.   Flora Classique and Ramesh Flowers had a duty to exercise reasonable care in the manufacture of the Subject Device.

194.   Flora Classique and Ramesh Flowers breached each of its duties in the following ways:

a.   Failing to fully understand its obligations as a manufacturer, distributor, and importer under the law.

b.   Failing to understand the product specifications and designs of the Subject Device.

c.   Failing to adhere to Walmart's supplier requirements.

d.   Failing to exercise reasonable care in selecting a foreign manufacturer of the subject product.

e.   Failing to inspect and test the foreign manufacturing facilities manufacturing the Subject Device.

f.   Failing to identify quality control mechanisms in the manufacturing process of the Subject Device to ensure that the product would not become contaminated with a deadly bacterium.

g.   Failing to establish contracts governing the design and production, testing, inspection, importation, and quality control of the Subject Device to ensure that the product would not be unreasonably dangerous for United States consumers.

h.   Failing to inspect the Subject Device to ensure that no defects existed that would present an unreasonable risk of harm to United States

1    consumers.

2    i.   Failing to understand the product specifications and designs of the

3         Subject Device.

4    j.   Failing to exercise reasonable care in the manufacture of the Subject

5         Device.

6    k.   Failing to inspect and test the Subject Device to ensure that no defects

7         existed that would present an unreasonable risk of harm to United States

8         consumers.

9    195.   As a direct and proximate result of the use of the Subject Device as a

10   household product and Flora Classique and Ramesh Flowers' negligence, JEANNIE RIST,

11   deceased, suffered catastrophic injury, pain and suffering, disability, and death.

12   196.   Flora Classique and Ramesh Flowers' conduct was a substantial factor and

13   proximate cause of the serious personal injuries and death sustained by Plaintiffs'

14   Decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for

15   an appreciable period of time. Plaintiffs have suffered damage as a direct and proximate

16   result of Defendants' conduct described herein.

17   **E.   <u>Count Five: Strict Product Liability—Walmart—Design Defect</u>**

18   197.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of

19   the Complaint as if fully stated herein.

20   //

198.   At all relevant times, Walmart was a corporation engaged in the business of marketing, distributing, and selling consumer products, including the Subject Device.

199.   As the distributor and retailer of the Subject Device that played a pivotal role in bringing the product to the United States consumer, Walmart is responsible for the design and manufacture of the subject product.

200.   The Subject Device was defective at the time it was designed, manufactured, assembled, distributed, and sold. The Subject Device was defective in that its design allowed it to become contaminated with the rare and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

201.   The Subject Device purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Walmart.

202.   At the time the Subject Device left Walmart's possession, the Subject Device was defective, and its condition made it unreasonably dangerous to Plaintiffs, including JEANNIE RIST, deceased.

203.   The Subject Device was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

//

204.   Walmart intended for the Subject Device to be used as a household product, as it was by Plaintiffs.

205.   Walmart knew or should have known that the Subject Device would be used as a household product, as it was by Plaintiffs.

206.   The Subject Device was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject Device would be used as a household product.

207.   At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the design defects associated with the Subject Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

208.   The Subject Device, as designed, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

209.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject Device. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Device that is not defective.

//

210.   The foreseeable risks of harm posed by the Subject Device could have been reduced or avoided by the adoption of a reasonable alternative design by Walmart, and the omission of an alternative design renders the Subject Device not reasonably safe for its intended use.

211.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that the Subject Device would not be unreasonably dangerous and defective, and that the product would not cause JEANNIE RIST, deceased, to develop a deadly infection.

212.   The Subject Device used by Plaintiffs as a household product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

213.   The use of the Subject Device as a household product was a substantial factor and the cause in fact of JEANNIE RIST's injuries, specifically, her contraction of an infection, her development of melioidosis, her subsequent pain and suffering, and eventual death.

214.   As a direct and proximate result of the use of the Subject Device as a household product and its defective design, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

215.   Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period of time.

Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**F.**   **Count Six: Strict Product Liability—Walmart—Manufacturing Defect**

216.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

217.   At all times relevant, Walmart was engaged in the marketing, distribution, and sale of the Subject Device.

218.   As the distributor and retailer of the Subject Device that played a pivotal role in bringing the product to the United States consumer, Walmart is responsible for the design and manufacture of the subject product.

219.   The Subject Device was defective in its manufacture in that the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or shipped. Walmart did not intend for the Subject Device to be contaminated with deadly bacteria at the time of manufacture and/or assembly.

220.   The Subject Device was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacterium not intended or found in other units of the same product.

221.   The Subject Device purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without

substantial change to the condition in which it was distributed and sold by Walmart.

222.   At the time the Subject Device left Walmart's possession, the Subject Device was defective, and its condition made it unreasonably dangerous for Plaintiffs, including JEANNIE RIST, deceased.

223.   The Subject Device was defective in that its manufacture and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

224.   Walmart intended for the Subject Device to be used as a household product, as it was by Plaintiffs.

225.   Walmart knew or should have known that the Subject Device would be used as a household product, as it was by Plaintiffs.

226.   The Subject Device was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject Device would be used as a household product.

227.   At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the manufacturing and assembling defects associated with the Subject Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

228.   The Subject Device, as manufactured and assembled, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

229.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject Device. The foreseeable risks also far outweigh any cost of manufacturing and assembling an alternative design of the Subject Device that is not defective.

230.   The Subject Device was manufactured and assembled with bacteria, including *Burkholderia pseudomallei*, present in and/or on the product.

231.   Walmart's failure to ensure proper sanitation, failure to ensure proper workmanship, failure to ensure adequate testing, and/or failure to ensure adequate labeling for the Subject Device caused the product to be manufactured and assembled in a manner that made the product defective and unreasonably dangerous.

232.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that the Subject Device would not be unreasonably dangerous and defective, and that the device would not cause JEANNIE RIST, deceased, to develop a deadly bacterial infection.

233.   The use of the Subject Device as a household product was a substantial factor and the cause in fact of JEANNIE RIST's injuries, specifically, her contraction of an infection, her development of melioidosis, her subsequent pain and suffering, and eventual

death.

234.   As a direct and proximate result of the use of the Subject Device as a household product and its defective design and manufacture, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

235.   Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**G.   Count Seven: Strict Products Liability—Walmart—Failure to Warn**

236.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

237.   At all times relevant, Walmart was engaged in the promotion, marketing, distribution, and/or sale of the Subject Device. As the distributor and retailer of the Subject Device that played a pivotal role in bringing the product to the United States consumer, Walmart is responsible for the design, manufacture, and warnings of the subject product.

238.   The Subject Device was defective at the time it was designed, manufactured, assembled, distributed, and sold.

239.   The Subject Device was defective in that its design and manufacture allowed it to become contaminated with deadly bacteria.

240.   The Subject Device was defective and unreasonably dangerous in that the warnings, instructions, labels, and materials failed to adequately warn distributors, retailers, and/or consumers about the product's serious risk of causing infection from aerosolization fluid leakage, and other means via the product.

241.   Walmart failed to timely and adequately warn consumers of the Subject Device's serious risks, including: (i) that the Subject Device was contaminated with bacteria, specifically, *Burkholderia pseudomallei*, at the time the product was manufactured, assembled, or imported; (ii) that the Subject Device could harbor and grow bacteria, including *Burkholderia pseudomallei*; and (iii) that bacteria, including *Burkholderia pseudomallei*, can reach the consumer through aerosolization, fluid leakage, and other means.

242.   The Subject Device purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Walmart.

243.   At the time the Subject Device left Walmart's possession, the Subject Device was defective, and its condition made it unreasonably dangerous for Plaintiffs, including JEANNIE RIST, deceased.

244.   The Subject Device was defective in that its design and manufacture allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like JEANNIE

RIST, deceased, through aerosolization, fluid leakage, and other means.

245.   Walmart intended for the Subject Device to be used as a household product, as it was by Plaintiffs.

246.   Walmart knew or should have known that the Subject Device would be used as a household product, as it was by Plaintiffs.

247.   The Subject Device was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject Device would be used as a household product.

248.   At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the design defects associated with the Subject Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

249.   The Subject Device, as designed by Defendants, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

250.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject Device. The foreseeable risks also far outweigh any cost of designing, manufacturing, and

1   producing an alternative design of the Subject Device that is not defective.

2      251.   The foreseeable risks of harm posed by the Subject Device could have been

3   reduced or avoided by the adoption of a reasonable alternative design by Defendants, and

4   the omission of an alternative design renders the Subject Device not reasonably safe for its

5   intended use.

6      252.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that

7   the Subject Device would not be unreasonably dangerous and defective, that Walmart

8   provided all proper warnings, instructions, and labels regarding the product, and that the

9   product would not cause JEANNIE RIST, deceased, to contract a bacterial infection.

10     253.   If Plaintiffs and/or JEANNIE RIST, deceased, had been made aware of the

11   significant risks of *Burkholderia pseudomallei* infection associated with the use of the

12   Subject Device, Plaintiffs would not have purchased and used the product in their

13   household.

14     254.   As a direct and proximate result of the use of the Subject Device as a

15   household product and its defective design, manufacture, and Walmart's failure to warn,

16   JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and

17   death.

18     255.   Walmart's conduct was a substantial factor and proximate cause of the serious

19   personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE RIST. After the

20   initial injury, Decedent JEANNIE RIST survived for an appreciable period of time.

FIRST AMENDED COMPLAINT

Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**H.   Count Eight: Negligence—Walmart**

256.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

257.   Walmart owed a duty of reasonable care to Plaintiffs, JEANNIE RIST, deceased, and all reasonably foreseeable users of the Subject Device, when it marketed, imported, distributed, and sold the Subject Device.

258.   This duty of reasonable care required Walmart to ensure that the Subject Device was safely designed, manufactured, imported, distributed, tested, and sold.

259.   Walmart had a duty to ensure that its supplier was in full compliance with industry regulations and standards in the manner it designed, manufactured, imported, and distributed the Subject Device, and to ensure that the product and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

260.   Prior to, on, and after the date that the Subject Device was sold to Plaintiffs, and at all relevant times, Walmart warranted, distributed, and sold the Subject Device for use by consumers, such as Plaintiffs.

261.   Walmart breached its duties and was negligent and careless in its marketing, importing, distributing, and sale of the Subject Device, and failed to use due care to avoid exposing consumers, including JEANNIE RIST, deceased, and Plaintiffs, to dangerous

bacteria when the product was used in a reasonably foreseeable manner.

262.   Walmart was negligent and careless in and about its selection, supervision, and retention of suppliers of the Subject Device.

263.   Walmart owed Plaintiffs and JEANNIE RIST, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn consumers, including Plaintiffs and JEANNIE RIST, deceased, about these defects.

264.   Walmart failed to use reasonable care to discover the defects and properly, adequately, and timely warn Plaintiffs and JEANNIE RIST, deceased, about these defects, thereby breaching its duty of care.

265.   Walmart failed to adequately warn of the danger of potential bacterial transmission and failed to adequately instruct on the safe use of the Subject Device.

266.   A reasonable distributor, importer, and retailer under the same or similar circumstances would have warned of the danger and instructed on the safe use of the Subject Device.

267.   Walmart was negligent and careless in that its product lacked warnings and instructions regarding the propensity of the Subject Device to become contaminated with deadly bacteria, and thereby caused harm or injury to consumers, including JEANNIE RIST, deceased, and Plaintiffs.

268.   Prior to, on, and after the date that the Subject Device was purchased, and at all relevant times, Walmart performed inadequate inspection, testing, and evaluation of the

product where such inspection and evaluation would have revealed the Subject Device's contamination and potential to cause harm or injury to consumers, including JEANNIE RIST, deceased.

269.   Walmart further breached its duty of care by allowing the Subject Device, including the product used by Plaintiffs, to remain contaminated with *Burkholderia pseudomallei* while still in the possession and control of Walmart, and then sold to the end-user.

270.   Walmart knew or reasonably should have known that the Subject Device was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

271.   Walmart knew or reasonably should have known that users of the Subject Device would not realize the danger of potential transmission of deadly bacteria to the consumer.

272.   Walmart owed a duty to Plaintiffs and JEANNIE RIST, deceased, and all foreseeable users to issue a timely recall of all Better Homes and Gardens aromatherapy products in use throughout the United States when it became aware that the Subject Device was contaminated.

273.   Walmart breached its duty by failing to timely recall the Subject Device, despite its knowledge that the product had been exposed to deadly bacteria and was possibly contaminated.

//

274.   A reasonable importer, distributor, and retailer under the same or similar circumstances would have recalled the Subject Device, given the potential risks to consumers.

275.   Walmart owed Plaintiffs and JEANNIE RIST, deceased, a duty of reasonable care to ensure the manufacturers and importers of the Subject Device follow good manufacturing, assembling, and distributing processes so as to prevent the Subject Device from becoming contaminated with deadly bacteria.

276.   Walmart breached its duty by failing to ensure the manufacturers and importers of the Subject Device follow good manufacturing, assembling, and distributing processes to prevent the Subject Device from becoming contaminated with deadly bacteria.

277.   In its role as a distributor and retailer of the Subject Device, Walmart had a duty to fully understand the product specifications and designs of the Subject Device.

278.   In its role as a distributor and retailer of the Subject Device, Walmart had a duty to exercise due care in selecting a reasonably careful manufacturer and importer of the subject product.

279.   In its role as a distributor and retailer of the Subject Device, Walmart had a duty to inspect the foreign manufacturing facilities that manufactured the Subject Device to ensure that the product was safe for United States consumers.

280.   In its role as a distributor and retailer of the Subject Device, Walmart had a duty to identify quality control mechanisms in the manufacturing and importing process of

the Subject Device to ensure that the product was safe for United States consumers.

281.   In its role as a distributor and retailer of the Subject Device, Walmart had a duty to establish contracts and enforcement mechanisms in the contract that governed the design and production, testing, inspection, and quality control of the Subject Device to ensure that the product was safe for United States consumers.

282.   In its role as a distributor and retailer of the Subject Device, Walmart had a duty to inspect the Subject Device to ensure that no defects existed that would present an unreasonable risk of harm to consumers in the United States.

283.   Walmart breached each of its duties as a distributor and retailer of the Subject Device in the following ways:

a.   Failing to understand the product specifications and designs of the Subject Device.

b.   Failing to exercise due care in selecting a foreign manufacturer and importer of the subject product.

c.   Failing to inspect and test the foreign manufacturing facilities that would be manufacturing the Subject Device.

d.   Failing to identify quality control mechanisms in the manufacturing and importing process of the Subject Device to ensure that the product would not become contaminated with deadly bacteria.

//

e.   Failing to establish contracts and enforcement mechanisms in the contracts that governed the design and production, testing, inspection, and quality control of the Subject Device to ensure that the product would not be unreasonably dangerous for United States consumers.

f.   Failing to inspect the Subject Device to ensure that no defects existed that would present an unreasonable risk of harm to United States consumers.

284.   As a direct and proximate result of the use of the Subject Device as a household product and Walmart's negligence, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

285.   Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

I.   **Count Nine: Breach of Implied Warranty—Walmart**

286.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

287.   At all relevant and material times, Walmart manufactured, distributed, advertised, promoted, and sold the Subject Device.

288.  At all relevant times, Walmart intended its Subject Device be used in the manner that Plaintiffs in fact used them.

289.  Walmart impliedly warranted its Subject Device to be of merchantable quality, safe and fit for the use for which the Walmart intended them and Plaintiff in fact used.

290.  Walmart breached its implied warranties as follows:

a.    Walmart failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer or distributor exercising reasonable care would have provided concerning that risk, in light of the likelihood that its Subject Device would cause harm.

b.    Walmart manufactured and/or sold the Subject Device and said product did not conform to representations made by Walmart when it left Walmart's control.

c.    Walmart manufactured and/or sold its Subject Device which was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the product or formulation exceeded the benefits associated with that design.

291.  These defects existed at the time the product left Walmart's control.

FIRST AMENDED COMPLAINT

292.   Walmart manufactured and/or sold its Subject Device when it deviated in a material way from the design specifications, formulas or performance standards or form otherwise identical products manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the product left Walmart's control.

293.   The Subject Device were unfit and unsafe for use by users as it posed an unreasonable and extreme risk of injury to persons using said products, and accordingly Walmart breached its expressed warranties and the implied warranties associated with the product.

294.   As a direct and proximate result of the use of the Subject Device as a household product and Walmart's negligence, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

295.   Walmart's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**J.**   **Count Ten: Strict Product Liability—Meredith Corporation—Design Defect**

296.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

297.   At all relevant times, Meredith Corporation was a corporation engaged in the business of branding, marketing, distributing, and selling consumer products, including the Subject Device.

298.   As the distributor and retailer of the Subject Device, Meredith Corporation is responsible for the design and manufacture of the subject product.

299.   The Subject Device was defective at the time it was designed, manufactured, assembled, distributed, and sold. The Subject Device was defective in that its design allowed it to become contaminated with the rare and deadly *Burkholderia pseudomallei* which causes melioidosis, a condition that is difficult to diagnose and can be fatal.

300.   The Subject Device purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Meredith Corporation.

301.   At the time the Subject Device left Meredith Corporation's possession, the Subject Device was defective, and its condition made it unreasonably dangerous to Plaintiffs, including JEANNIE RIST, deceased. The Subject Device was defective in that its design allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the product. Said bacteria could subsequently, and did, come into contact with consumers like JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

302.   Meredith Corporation intended for the Subject Device to be used as a household product, as it was by Plaintiffs.

303.   Meredith Corporation knew or should have known that the Subject Device would be used as a household product, as it was by Plaintiffs.

304.   The Subject Device was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject Device would be used as a household product.

305.   At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the design defects associated with the Subject Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

306.   The Subject Device, as designed, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during routine household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

307.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject Device. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Device that is not defective.

//

308.   The foreseeable risks of harm posed by the Subject Device could have been reduced or avoided by the adoption of a reasonable alternative design by Meredith Corporation, and the omission of an alternative design renders the Subject Device not reasonably safe for its intended use.

309.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that the Subject Device would not be unreasonably dangerous and defective, and that the product would not cause JEANNIE RIST, deceased, to develop a deadly infection.

310.   The Subject Device used by Plaintiffs as a household product did not perform as safely as an ordinary consumer would have expected it to perform when used in an intended or reasonably foreseeable way.

311.   The use of the Subject Device as a household product was a substantial factor and the cause in fact of JEANNIE RIST's injuries, specifically, her contraction of an infection, her development of melioidosis, her subsequent pain and suffering, and eventual death.

312.   As a direct and proximate result of the use of the Subject Device as a household product and its defective design, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

313.   Meredith Corporation's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period

of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**K.    Count    Eleven:    Strict    Product    Liability—Meredith    Corporation—Manufacturing Defect**

314.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

315.   At all times relevant, Meredith Corporation was engaged in the branding, marketing, distribution, and sale of the Subject Device.

316.   As the distributor and retailer of the Subject Device that played a pivotal role in bringing the product to the United States consumer, Meredith Corporation is responsible for the design and manufacture of the subject product.

317.   The Subject Device was defective in its manufacture in that the product was exposed to or was allowed to collect or develop *Burkholderia pseudomallei* at the time that the product was manufactured and/or shipped.

318.   Meredith Corporation did not intend for the Subject Device to be contaminated with deadly bacteria at the time of manufacture and/or assembly.

319.   The Subject Device was defective in manufacture in that it differed from the intended result or from other ostensibly identical units of the same line of products in that it contained a deadly bacterium not intended or found in other units of the same product.

//

320. The Subject Device purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Meredith Corporation.

321. At the time the Subject Device left Meredith Corporation's possession, the Subject Device was defective, and its condition made it unreasonably dangerous for Plaintiffs, including JEANNIE RIST, deceased.

322. The Subject Device was defective in that its manufacture and assembly allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

323. Meredith Corporation intended for the Subject Device to be used as a household product, as it was by Plaintiffs.

324. Meredith Corporation knew or should have known that the Subject Device would be used as a household product, as it was by Plaintiffs.

325. The Subject Device was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject Device would be used as a household product.

326. At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the manufacturing and assembling defects associated with the Subject

Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

327.   The Subject Device, as manufactured and assembled, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

328.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject Device. The foreseeable risks also far outweigh any cost of manufacturing and assembling an alternative design of the Subject Device that is not defective.

329.   The Subject Device was manufactured and assembled with bacteria, including *Burkholderia pseudomallei*, present in and/or on the product.

330.   Meredith Corporation's failure to ensure proper sanitation, failure to ensure proper workmanship, failure to ensure adequate testing, and/or failure to ensure adequate labeling for the Subject Device caused the product to be manufactured and assembled in a manner that made the product defective and unreasonably dangerous.

331.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that the Subject Device would not be unreasonably dangerous and defective, and that the device would not cause JEANNIE RIST, deceased, to develop a deadly bacterial infection.

332.   The use of the Subject Device as a household product was a substantial factor and the cause in fact of JEANNIE RIST's injuries, specifically, her contraction of an infection, her development of melioidosis, her subsequent pain and suffering, and eventual death.

333.   As a direct and proximate result of the use of the Subject Device as a household product and its defective design and manufacture, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death.

334.   Meredith Corporation's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**L.   Count Twelve: Strict Products Liability—Meredith Corporation—Failure to Warn**

335.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

336.   At all times relevant, Meredith Corporation was engaged in the branding, promotion, marketing, distribution, and/or sale of the Subject Device.

337.   As the marketer, distributor, and retailer of the Subject Device that played a pivotal role in bringing the product to the United States consumer, Meredith Corporation

is responsible for the design, manufacture, and warnings of the subject product.

338.   The Subject Device was defective at the time it was designed, manufactured, assembled, distributed, and sold.

339.   The Subject Device was defective in that its design and manufacture allowed it to become contaminated with deadly bacteria.

340.   The Subject Device was defective and unreasonably dangerous in that the warnings, instructions, labels, and materials failed to adequately warn distributors, retailers, and/or consumers about the product's serious risk of causing infection from aerosolization, fluid leakage, and other means via the product.

341.   Meredith Corporation failed to timely and adequately warn consumers of the Subject Device's serious risks, including: (i) that the Subject Device was contaminated with bacteria, specifically, *Burkholderia pseudomallei*, at the time the product was manufactured, assembled, or imported; (ii) that the Subject Device could harbor and grow bacteria, including *Burkholderia pseudomallei*; and (iii) that bacteria, including *Burkholderia pseudomallei*, can reach the consumer through aerosolization, fluid leakage, and other means.

342.   The Subject Device purchased and used by Plaintiffs was expected to reach, and did reach, Plaintiffs, the intended consumers, and ultimate consumers, without substantial change to the condition in which it was distributed and sold by Meredith Corporation.

343.   At the time the Subject Device left Meredith Corporation's possession, the Subject Device was defective, and its condition made it unreasonably dangerous for Plaintiffs, including JEANNIE RIST, deceased.

344.   The Subject Device was defective in that its design and manufacture allowed bacteria, including *Burkholderia pseudomallei*, to collect and multiply in the device. Said bacteria could subsequently, and did, come into contact with consumers, like JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

345.   Meredith Corporation intended for the Subject Device to be used as a household product, as it was by Plaintiffs.

346.   Meredith Corporation knew or should have known that the Subject Device would be used as a household product, as it was by Plaintiffs.

347.   The Subject Device was used by Plaintiffs in the manner in which it was intended to be used, and thus, it was reasonably foreseeable that the Subject Device would be used as a household product.

348.   At all times relevant, neither Plaintiffs nor JEANNIE RIST, deceased, could have discovered the design defects associated with the Subject Device through the exercise of due diligence, nor could they have been expected to perceive the danger posed by the Subject Device. Thus, the dangerous condition of the Subject Device was unknowable to Plaintiffs and JEANNIE RIST, deceased.

//

349.   The Subject Device, as designed by Meredith Corporation, transmitted bacteria, including *Burkholderia pseudomallei*, directly to consumers during household use, including JEANNIE RIST, deceased, through aerosolization, fluid leakage, and other means.

350.   The foreseeable risks of transmitting bacteria to consumers during household use, including JEANNIE RIST, deceased, far outweigh any utility of using the Subject Device. The foreseeable risks also far outweigh any cost of designing, manufacturing, and producing an alternative design of the Subject Device that is not defective.

351.   The foreseeable risks of harm posed by the Subject Device could have been reduced or avoided by the adoption of a reasonable alternative design by Defendants, and the omission of an alternative design renders the Subject Device not reasonably safe for its intended use.

352.   Plaintiffs and JEANNIE RIST, deceased, had a reasonable expectation that the Subject Device would not be unreasonably dangerous and defective, that Meredith Corporation provided all proper warnings, instructions, and labels regarding the product, and that the product would not cause JEANNIE RIST, deceased, to contract a bacterial infection.

353.   If Plaintiffs and/or JEANNIE RIST, deceased, had been made aware of the significant risks of *Burkholderia pseudomallei* infection associated with them use of the Subject Device, Plaintiffs would not have purchased and used the product in their

FIRST AMENDED COMPLAINT

1   household.

2   354.   As a direct and proximate result of the use of the Subject Device as a

3   household product and its defective design, manufacture, and Meredith Corporation's

4   failure to warn, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering,

5   disability, and death.

6   355.   Meredith Corporation's conduct was a substantial factor and proximate cause

7   of the serious personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE

8   RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period

9   of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants'

10   conduct described herein.

11   **M.**   **Count Thirteen: Negligence—Meredith Corporation**

12   356.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of

13   the Complaint as if fully stated herein.

14   357.   Meredith Corporation owed a duty of reasonable care to Plaintiffs, JEANNIE

15   RIST, deceased, and all reasonably foreseeable users of the Subject Device, when it

16   branded, marketed, imported, distributed, and sold the Subject Device.

17   358.   This duty of reasonable care required Meredith Corporation to ensure that the

18   Subject Device was safely designed, manufactured, imported, distributed, tested, and sold.

19   359.   Meredith Corporation had a duty to ensure that its supplier was in full

20   compliance with industry regulations and standards in the manner it designed,

manufactured, imported, and distributed the Subject Device, and to ensure that the product and was not defective or unreasonably dangerous for its intended purpose and other foreseeable uses.

360.   Prior to, on, and after the date that the Subject Device was sold to Plaintiffs, and at all relevant times, Meredith Corporation warranted, distributed, and sold the Subject Device for use by consumers, such as Plaintiffs.

361.   Meredith Corporation breached its duties, and was negligent and careless in its marketing, importing, distributing, and sale of the Subject Device, and failed to use due care to avoid exposing consumers, including JEANNIE RIST, deceased, and Plaintiffs, to dangerous bacteria when the product was used in a reasonably foreseeable manner.

362.   Meredith Corporation was negligent and careless in and about its selection, supervision, and retention of suppliers of the Subject Device.

363.   Meredith Corporation owed Plaintiffs and JEANNIE RIST, deceased, a duty of reasonable care to discover these defects and properly, adequately, and timely warn consumers, including Plaintiffs and JEANNIE RIST, deceased, about these defects.

364.   Meredith Corporation failed to use reasonable care to discover the defects and properly, adequately, and timely warn Plaintiffs and JEANNIE RIST, deceased, about these defects, thereby breaching its duty of care.

365.   Meredith Corporation failed to adequately warn of the danger of potential bacterial transmission and failed to adequately instruct on the safe use of the Subject

Device.

366.   A reasonable distributor, importer, and retailer under the same or similar circumstances would have warned of the danger and instructed on the safe use of the Subject Device.

367.   Meredith Corporation was negligent and careless in that its product lacked warnings and instructions regarding the propensity of the Subject Device to become contaminated with deadly bacteria, and thereby caused harm or injury to consumers, including JEANNIE RIST, deceased, and Plaintiffs.

368.   Prior to, on, and after the date that the Subject Device was purchased, and at all relevant times, Meredith Corporation performed inadequate inspection, testing, and evaluation of the product where such inspection and evaluation would have revealed the Subject Device's contamination and potential to cause harm or injury to consumers, including JEANNIE RIST, deceased.

369.   Meredith Corporation further breached its duty of care by allowing the Subject Device, including the product used by Plaintiffs, to remain contaminated with *Burkholderia pseudomallei* while still in the possession and control of Meredith Corporation, and then sold to the end-user.

370.   Meredith Corporation knew or reasonably should have known that the Subject Device was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

371.    Meredith Corporation knew or reasonably should have known that users of the Subject Device would not realize the danger of potential transmission of deadly bacteria to the consumer.

372.    Meredith Corporation owed a duty to Plaintiffs and JEANNIE RIST, deceased, and all foreseeable users to issue a timely recall of all Better Homes and Gardens aromatherapy products in use throughout the United States when it became aware that the Subject Device was contaminated.

373.    Meredith Corporation breached its duty by failing to timely recall the Subject Device, despite its knowledge that the product had been exposed to deadly bacteria and was possibly contaminated.

374.    A reasonable importer, distributor, and retailer under the same or similar circumstances would have recalled the Subject Device, given the potential risks to consumers.

375.    Meredith Corporation owed Plaintiffs and JEANNIE RIST, deceased, a duty of reasonable care to ensure the manufacturers and importers of the Subject Device follow good manufacturing, assembling, and distributing processes to prevent the Subject Device from becoming contaminated with deadly bacteria.

376.    Meredith Corporation breached its duty by failing to ensure the manufacturers and importers of the Subject Device follow good manufacturing, assembling, and distributing processes to prevent the Subject Device from becoming contaminated with

73
FIRST AMENDED COMPLAINT

deadly bacteria.

377.   In its role as a distributor and retailer of the Subject Device, Meredith Corporation had a duty to fully understand the product specifications and designs of the Subject Device.

378.   In its role as a distributor and retailer of the Subject Device, Meredith Corporation had a duty to exercise due care in selecting a reasonably careful manufacturer and importer of the subject product.

379.   In its role as a distributor and retailer of the Subject Device, Meredith Corporation had a duty to inspect the foreign manufacturing facilities that manufactured the Subject Device to ensure that the product was safe for United States consumers.

380.   In its role as a distributor and retailer of the Subject Device, Meredith Corporation had a duty to identify quality control mechanisms in the manufacturing and importing process of the Subject Device to ensure that the product was safe for United States consumers.

381.   In its role as a distributor and retailer of the Subject Device, Meredith Corporation had a duty to establish contracts and enforcement mechanisms in the contract that governed the design and production, testing, inspection, and quality control of the Subject Device to ensure that the product was safe for United States consumers.

382.   In its role as a distributor and retailer of the Subject Device, Meredith Corporation had a duty to inspect the Subject Device to ensure that no defects existed that

would present an unreasonable risk of harm to consumers in the United States.

383.   Meredith Corporation breached each of its duties as a distributor and retailer of the Subject Device in the following ways:

      a.    Failing to understand the product specifications and designs of the Subject Device.

      b.    Failing to exercise due care in selecting a foreign manufacturer and importer of the subject product.

      c.    Failing to inspect and test the foreign manufacturing facilities that would be manufacturing the Subject Device.

      d.    Failing to identify quality control mechanisms in the manufacturing and importing process of the Subject Device to ensure that the product would not become contaminated with deadly bacteria.

      e.    Failing to establish contracts and enforcement mechanisms in the contracts that governed the design and production, testing, inspection, and quality control of the Subject Device to ensure that the product would not be unreasonably dangerous for United States consumers.

      f.    Failing to inspect the Subject Device to ensure that no defects existed that would present an unreasonable risk of harm to United

States consumers.

384.   As a direct and proximate result of the use of the Subject Device as a household product and Meredith Corporation's negligence, JEANNIE RIST, deceased, suffered catastrophic injury, pain and suffering, disability, and death. Meredith Corporation's conduct was a substantial factor and proximate cause of the serious personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants' conduct described herein.

**N.**   **Count Fourteen: Breach of Implied Warranty—Meredith Corporation**

385.   Plaintiffs incorporate and re-allege by reference all preceding paragraphs of the Complaint as if fully stated herein.

386.   At all relevant and material times, Meredith Corporation manufactured, distributed, advertised, promoted, and sold the Subject Device.

387.   At all relevant times, Meredith Corporation intended its Subject Device be used in the manner that Plaintiffs in fact used them.

388.   Meredith Corporation impliedly warranted its Subject Device to be of merchantable quality, safe and fit for the use for which Meredith Corporation intended them and Plaintiff in fact used.

//

389.   Meredith Corporation breached its implied warranties as follows:

a.   Meredith Corporation failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer or distributor exercising reasonable care would have provided concerning that risk, in light of the likelihood that its Subject Device would cause harm.

b.   Meredith Corporation manufactured and/or sold the Subject Device and said product did not conform to representations made by Meredith Corporation when it left Walmart's control.

c.   Meredith Corporation manufactured and/or sold its Subject Device which was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the product or formulation exceeded the benefits associated with that design.

d.   These defects existed at the time the product left Meredith Corporation's control.

e.   Meredith Corporation manufactured and/or sold its Subject Device when it deviated in a material way from the design specifications, formulas or performance standards or form otherwise identical products manufactured to the same design specifications, formulas, or

77
FIRST AMENDED COMPLAINT

1    performance standards, and these defects existed at the time the product

2    left Walmart's control.

3        f.    The Subject Device were unfit and unsafe for use by users as it posed

4              an unreasonable and extreme risk of injury to persons using said

5              products, and accordingly Meredith Corporation breached its expressed

6              warranties and the implied warranties associated with the product.

7    390.  As a direct and proximate result of the use of the Subject Device as a

8    household product and Meredith Corporation's negligence, JEANNIE RIST, deceased,

9    suffered catastrophic injury, pain and suffering, disability, and death.

10   391.  Meredith Corporation's conduct was a substantial factor and proximate cause

11   of the serious personal injuries and death sustained by Plaintiffs' Decedent, JEANNIE

12   RIST. After the initial injury, Decedent JEANNIE RIST survived for an appreciable period

13   of time. Plaintiffs have suffered damage as a direct and proximate result of Defendants'

14   conduct described herein.

15                              **V.    DAMAGES**

16   392.  Plaintiffs incorporate and re-allege by reference all preceding paragraphs of

17   the Complaint as if fully stated herein.

18   393.  After the initial injury, Decedent JEANNIE RIST survived for an appreciable

19   period of time. Plaintiffs, as surviving spouse and successor-in-interest and children to

20   Decedent JEANNIE RIST, seek all damages otherwise accruing to Decedent in a survival

action brought pursuant to the California Code of Civil Procedure section 377.34, including pain, suffering, and disfigurement under subdivision b.

394.   Plaintiffs lost their spouse and mother, respectively, due to injuries she sustained as a result of Defendants' conduct. By virtue of her preventable and untimely death, Plaintiffs suffered loss of future financial support, loss of future household services, and loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, expectations of future support, as well as other benefits and assistance that Decedent would have provided to them and which will be stated according to proof, in accordance with California Code of Civil Procedure section 377.61.

395.   As further direct and proximate result of Defendants' conduct, Plaintiffs incurred economic damages in an amount to be determined according to proof in accordance with California Code of Civil Procedure section 377.61.

396.   As a direct and proximate result of Defendants' conduct, Plaintiffs seek to recover all damages to which they are entitled and which will be stated according to proof, pursuant to California Code of Civil Procedure section 425.10.

## VI.   <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs demand judgment against the Defendants, and each of them, as follows:

a.      Judgment for Plaintiffs and against Defendants;

//

FIRST AMENDED COMPLAINT

b.   Damages to compensate Plaintiffs for their injuries, economic losses and pain and suffering sustained as a result of the use of Defendants' subject device;

c.   For the wrongful death claimants, the non-economic damages caused by the wrongful death of JEANNIE RIST, deceased, in an amount in excess of the minimum jurisdictional amount of this Court, according to proof, at trial, including but not limited to damages for Plaintiffs' loss of Decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support;

d.   For the wrongful death claimants, the economic damages caused by the wrongful death of JEANNIE RIST, deceased, being the loss of the financial support that Decedent would have contributed to Plaintiffs, the loss of gifts or benefits that she would have given to her spouse and/or children, funeral and burial expenses and the reasonable value of household services that Decedent would have provided, in an amount according to proof at trial;

e.   Under California Code of Civil Procedure section 377.34, as amended by Senate Bill No. 447, for the successors in interests of JEANNIE RIST, deceased, the non-economic damages for JEANNIE RIST's pain, suffering, and disfigurement.

f.   For the successors to the interests of JEANNIE RIST, deceased, the economic damages, including past hospital, medical, and other health care and other

80
FIRST AMENDED COMPLAINT

1    expenses incurred prior to her death, according to proof at trial;

2    g.    All damages recoverable under California law;

3    h.    Pre and post judgment interest at the lawful rate;

4    i.    For costs of suit incurred herein; and,

5    j.    Such other and further relief as the Court deems just and proper.

6    Date: October 10, 2023         Respectfully submitted,

7                                    /s/ *Kevin M. Loew*
                                     KEVIN M. LOEW, ESQ. CA Bar #238080
8                                    MICHAEL B. GURIEN, Esq., CA Bar #180538
                                     NICOLE R. POURSALIMI, Esq., CA Bar #348440
9                                    **WATERS, KRAUS & PAUL**
                                     11601 Wilshire Blvd., Suite 1900
10                                   Los Angeles, CA 90025
                                     Tel: 310-414-8146       Fax: 310-414-8156
11                                   kloew@waterskraus.com
                                     mgurien@waterskraus.com
12                                   npoursalimi@waterskraus.com

13                                   /s/ *Ben Martin* (*pro hac vice to be filed*)
                                     BEN C. MARTIN (TX Bar #13052400)
14                                   (*pro hac vice to be filed*)
                                     CAIO FORMENTI (TX Bar #24104676)
15                                   (*pro hac vice*)
                                     **BEN MARTIN LAW GROUP**
16                                   3141 Hood Street, Level 6
                                     Dallas, TX 75219
17                                   Tel: 214.761.6614       Fax: 214.744.7590
                                     bmartin@bencmartin.com
18                                   cformenti@bencmartin.com
                                     eservice@bencmartin.com

19                                   **Attorneys for Plaintiffs**

20

81
FIRST AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Date: October 10, 2023                    Respectfully submitted,

/s/ *Kevin M. Loew*
KEVIN M. LOEW, ESQ. CA Bar #238080
MICHAEL B. GURIEN, Esq., CA Bar #180538
NICOLE R. POURSALIMI, Esq., CA Bar #348440
**WATERS, KRAUS & PAUL**
11601 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Tel: 310-414-8146        Fax: 310-414-8156
kloew@waterskraus.com
mgurien@waterskraus.com
npoursalimi@waterskraus.com

/s/ *Ben Martin* (*pro hac vice to be filed*)
BEN C. MARTIN (TX Bar 13052400)
(*pro hac vice to be filed*)
**BEN MARTIN LAW GROUP**
3141 Hood Street, Level 6
Dallas, TX 75219
Tel: 214.761.6614        Fax: 214.744.7590
bmartin@bencmartin.com
eservice@bencmartin.com

**Attorneys for Plaintiffs**

COMPLAINT

## **EXHIBIT A**

### **DECLARATION**

I, JOHN RIST (hereinafter, "The Affiant"), in accordance with the provisions of Section 377.32 of the California Code of Civil Procedure, declare and state that:

1.    The Decedent's name is Jeannie Rist.

2.    The Decedent died on or about March 22, 2021, in or around Wichita, Kansas.

3.    No proceeding is now pending in California or any other State for the administration of Jeannie Rist's estate.

4.    The Affiant is the Decedent's surviving spouse.

5.    The Affiant is the Decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the Decedent's interest in the action or proceeding.

6.    The Affiant was living at the time of Decedent's death.

7.    No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding.

8.    Attached to this declaration is a certified copy of the death certificate of Decedent.

The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed, this ⎽⎽⎽ day of July, 2023, in _Wichita Ks., Sedgwick_ County, Kansas.

_Signature of Affiant_

Kansas Department of Health and Environment
Office of Vital Statistics

# CERTIFICATE OF DEATH

115-2021-07540

State File Number

| 1. Decedent's Legal Name (First, Middle, Last) | | 2. Sex | 3. Date Of Death (Month, Day, Year) | 4. Social Security Number | | 5. Date Filed By State Registrar |
|---|---|---|---|---|---|---|
| JEANNE  FAYE  RIST | | FEMALE | 03/22/2021 | 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 | | 04/01/2021 |

| 6. Last Name Prior to First Marriage | 7a. Date Of Birth | 7b. Age | 8. Place Of Birth (City and State Or Foreign Country) | | 9. Decedent Ever In U.S. Armed Forces |
|---|---|---|---|---|---|
| MOCK | 09/13/1967 | 53 YEAR(S) | WICHITA, KANSAS | | NO |

| 10a. Place Of Death | 10b. Facility Name (If Not Institution, Street And Number) | | 10c. County Of Death | 10d. Zip Code |
|---|---|---|---|---|
| INPATIENT | WESLEY MEDICAL CENTER | | SEDGWICK | 67214 |

| 10e. City or Town Of Death | 11. Marital Status | 12. Surviving Spouse (Name Prior to First Marriage) | 13a. Residence – Street Address |
|---|---|---|---|
| WICHITA | MARRIED | JOHN RIST | 20921 W 55TH S |

| 13b. State or Foreign Country | 13c. County or Province | 13d. City or Town | 13e. Zip Code | 13f. Inside City Limits |
|---|---|---|---|---|
| KANSAS | SEDGWICK | VIOLA | 67149 | YES |

| 14. Decedent's Ancestry | 15. Decedent's Race |
|---|---|
| AMERICAN | WHITE |

| 16. Decedent's Hispanic Origin |
|---|
| NOT SPANISH, HISPANIC, LATINO |

| 17. Decedent's Education | 18. Decedent's Occupation | 19. Decedent's Industry |
|---|---|---|
| 9TH - 12TH GRADE, NO DIPLOMA | HOMEMAKER | OWN HOME |

| 20. Father/Parent Birth Name  (First, Middle, Last) | 21. Mother/Parent Birth Name (First, Middle, Last) |
|---|---|
| FRED  MOCK, SR | SONDRA  GROVES |

| 22a. Informant's Name (First, Middle, Last) | 22b. Mailing Address (Street, Number, City, State, And Zip Code) | 22c. Relationship To Decedent |
|---|---|---|
| CEIARA  RIST | 2625 S WEST ST LOT 229, WICHITA, KANSAS, 67217 | DAUGHTER |

| 23. Method Of Disposition | 24a. Place Of Disposition | 24b. Location |
|---|---|---|
| BURIAL | GREENWOOD CEMETERY | WICHITA, KANSAS |

| 25. Funeral Service Licensee And License Number | 26. Name Of Embalmer And License Number |
|---|---|
| /e/R  GLEN  MCPHERRON - 2292 | DENNIS  J  CHRISTIE - 3504 |

| 27. Name And Address Of Firm  BROADWAY MORTUARY, 1147 S BROADWAY STREET, WICHITA, KANSAS, 67211 |
|---|

28. Cause Of Death    Part I. Events (diseases, injuries, or complications) that directly caused the death.

| | | Approximate Interval:  Onset To Death |
|---|---|---|
| IMMEDIATE CAUSE (Final Disease Or Condition Resulting In Death) | A) SEPTIC SHOCK | A) |
| Conditions, if any, leading To cause listed on line A) | B) PNEUMONIA | B) |
| UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LISTED LAST | C) ACUTE HYPOXIC RESPIRATORY FAILURE | C) |
| | D) | D) |

| Part II. Other Significant Conditions Contributing To Death But Not Resulting In The Underlying Cause Given In Part I. | 29a. Autopsy | 29b. Autopsy Findings Available To Complete The Cause Of Death | 29c. Coroner Contacted |
|---|---|---|---|
| | NO | | NO |

| 30. Did Tobacco Use Contribute To Death? | 31. If Female: | 32. Manner Of Death |
|---|---|---|
| UNKNOWN | NOT PREGNANT WITHIN THE PAST YEAR | NATURAL |

| 33a. Date Of Injury | 33b. Time Of Injury | 33c. Injury At Work | 33d. How Injury Occurred |
|---|---|---|---|
| | | | |

| 33e. Place Of Injury | 33f. Location (Street And Number Or Rural Route, City Or Town, State, And Zip Code) |
|---|---|
| | |

| 34a. Date Pronounced Dead | 34b. Time Pronounced Dead | 34c. Actual or Presumed Time Of Death | 34d. Name Of Person Pronouncing Death | 34e. License No. |
|---|---|---|---|---|
| 03/22/2021 | 1529 | 1529 | | |

| 35a. Pronouncing and Certifying Physician | 35b. License No. | 35c. Date Certified | 35d. Address and Zip Code Of Person Completing Cause Of Death |
|---|---|---|---|
| /e/KATHRYN  BRICKMAN - MD | 0438627 | 03/30/2021 | 550 N HILLSIDE ST, WICHITA, KANSAS, 67208 |

VS231A – Rev. 10/11/2016

04/07/2021 V250000037980 03 RIST 202104007540 5 FH

This is to certify that this is a true and correct reproduction of the record on file with the Office of Vital Statistics, Topeka, Kansas, certified on the date stamped below.



2021 APR 07 PM 01:14

Kay Haug,

State Registrar
Office of Vital Statistics
Department of Health & Environment

N1866999

It is in violation of KSA 65-2422d(g) to prepare or issue any certificate which purports to be an original, certified copy or abstract or copy of a certificate, except as authorized in the Uniform Vital Statistics Act or rules and regulations adopted under this act.

CERTIFIED COPIES WILL BE PRODUCED ON WATERMARKED MULTI-COLOR SECURITY PAPER.

S T A T E   S E A L   C O L O R   W I L L   F A D E   W H E N   R U B B E D